# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 07-20164-05-JWL |
| | ) | |
| JEREMY GILMORE. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

A jury convicted Defendant Jeremy Gilmore on Count 1 of the Second Superseding Indictment returned in this case. The matter before the court is Mr. Gilmore's "Motion for New Trial and/or Judgment of Acquittal" (Doc. 280). As discussed more fully herein, the court denies Mr. Gilmore's requested relief. In short, the government presented evidence sufficient for a rational juror to find Mr. Gilmore guilty beyond a reasonable doubt on his count of conviction. Moreover, he has failed to show that the interest of justice requires a new trial.

## BACKGROUND

On May 22, 2008, a Second Superseding Indictment was filed as to Mr. Gilmore and Leona Garcia, Kevin Funk, Wayne Fitts, Jr., Steve Saindon, and Copper Lesco (Doc. 123). In Count 1, the Second Superseding Indictment alleged that beginning on or about

January 1, 2006, and continuing to on or about September 6, 2007, in the District of

Kansas and elsewhere, Mr. Gilmore, conspired with other named and unnamed

coconspirators to distribute and possess with intent to distribute more than 50 grams of

methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 18 U.S.C.

§ 2—all in violation of 21 U.S.C. § 846.   Mr. Gilmore was the only defendant to

proceed to trial as all the other defendants pleaded guilty to their charges.[1]

On May 19, 2009, Mr. Gilmore proceeded to trial.  On May 26, 2009, the jury

returned a guilty verdict.  Mr. Gilmore filed a timely motion for judgment of acquittal

or new trial, which is now before the court (Doc. 280).

## STANDARD

Mr. Gilmore moves for a judgment of acquittal.  The court must uphold the jury's

verdict of guilty if "'any rational trier of fact could have found the essential elements of

the crime[s] beyond a reasonable doubt.'" *United States v. Urbano*, 563 F.3d 1150, 1156

(10th Cir. 2009) (quoting *United States v. Doodles*, 539 F.3d 1291, 1293 (10th Cir.

2008)).   The court must "'ask only whether taking the evidence–both direct and

---

[1]Mr. Fitts pleaded guilty on May 22, 2008 to Count 1 of the Superseding Indictment (Doc. 120 and 121), and the court granted the government's motion to dismiss Mr. Fitts from the Second Superseding Indictment on May 28, 2008 (Doc. 127). Ms. Garcia pleaded guilty on June 16, 2008 to Count 1 of the Second Superseding Indictment (Doc. 146 and 147); Mr. Funk pleaded guilty on June 16, 2008 to Count 1 of the Second Superseding Indictment (Doc. 148 and 149); Ms. Lesco pleaded guilty on November 10, 2008 to Count 1 of the Second Superseding Indictment (Doc. 192 and 193); and Mr. Saindon pleaded guilty on November 10, 2008 to Count 1 of the Second Superseding Indictment (Doc. 194 and 195).

circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'" *United States v. Erickson*, 561 F.3d 1150, 1158 (10th Cir. 2009) (quoting *United States v. Hanzlicek*, 187 F.3d 1228, 1239 (10th Cir. 1999)). "'While the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt.'" *Erickson*, 187 F.3d at 1258-59 (quoting *United States v. Burkley*, 513 F.3d 1183, 1188 (10th Cir. 2008)).

As to Mr. Gilmore's alternative motion for new trial, Federal Rule of Criminal Procedure 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "A motion for a new trial is not regarded with favor and is only issued with great caution." *United States v. Herrera*, 481 F.3d 1266, 1269-70 (10th Cir. 2007) (citing *United States v. Trujillo*, 136 F.3d 1388, 1394 (10th Cir. 1998)). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992).

## DISCUSSION

In his motion, Mr. Gilmore alleges that there was insufficient evidence to support the jury's verdict and specifically that the government failed to establish beyond a reasonable doubt that "Mr. Gilmore was involved in the conspiracy to distribute" and that "the conspiracy possessed 50+ grams of methamphetamine." "Motion for New Trial

and/or Judgment of Acquittal," Doc. 280, at 1-2.  Mr. Gilmore also argues that "the Court erred in instructing the jury such that the instructions individually and as whole misled the jury."  *Id.* at 2.  Specifically, Mr. Gilmore contends that the court erred by failing to instruct the jury on the lesser-included crime of conspiracy to possess, by failing to instruct the jury that the definition of "distribute" does not include "sharing" as described by Mr. Gilmore during his testimony, and by failing to give the requested modified charging instruction on the charged conspiracy count.  *Id.*  The court will analyze each of Mr. Gilmore's arguments in turn and finds that Mr. Gilmore's motion is without merit.

## I. Motion for Judgment of Acquittal

### A. *Sufficiency of the Evidence*

The jury convicted Mr. Gilmore on Count 1 of the Second Superseding Indictment, which charged him with conspiracy to distribute and possess with intent to distribute more than 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841 and 846.  "To obtain a conviction for conspiracy, the government must prove that (1) there was an agreement to violate the law; (2) Defendant knew the essential objectives of the conspiracy; (3) Defendant knowingly and voluntarily took part in the conspiracy; and (4) the coconspirators were interdependent."  *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1129 (10th Cir. 2004) (quoting *United States v. Ailsworth*, 138 F.3d 843, 850 (10th Cir. 1998)).  Mr. Gilmore does not point specifically to what element or elements for which the government failed to provide sufficient evidence in support; rather, he relies

on the general argument that, overall, the evidence was insufficient without providing any extensive discussion or reasoning for his claim.  "Knowledge [of illegal activity] and presence [at the crime scene] coupled with knowing participation in the illegal drug activities are sufficient to sustain a drug conspiracy."  *United States v. Reese*, 145 Fed. App'x 269, 274 (10th Cir. 2005) (alterations in original) (quoting *United States v. Coyote*, 963 F.2d 1328, 1331 (10th Cir. 1992)).

"To prove an agreement, the government need not offer direct proof of an express agreement on the part of the defendant.  Instead the agreement may be informal and may be inferred entirely from circumstantial evidence."  *Pulido-Jacobo*, 377 F.3d at 1129 (quoting *United States v. Lang*, 364 F.3d 1210, 1223 (10th Cir. 2004), *vacated on other grounds by Lang v. United States*, 543 U.S. 1108 (2005)).  "Although 'mere association' with conspirators is insufficient to support a conspiracy conviction, 'frequent contacts' among conspirators and 'their joint appearances at transactions and negotiations' tend to show the existence of an agreement."  *United States v. Aragon*, 141 F.3d 1186, 1998 WL 166059, *3 (10th Cir. Apr. 10, 1998) (table op.) (quoting *United States v. Evans*, 970 F.2d 663, 669 (10th Cir. 1992)); *see also United States v. Kelley*, 187 Fed. App'x 876, 884 (10th Cir. 2006) ("Although no government witness testified about an express agreement between [the co-defendants], the prosecution presented ample evidence to allow the jury to infer reasonably that such an agreement existed.").

The jury could reasonably infer an agreement existed from the testimony of several of the government's witnesses.  Many of the methamphetamine customers of

Mr. Funk and Mr. Fitts, including William Sneddon, Michael Smith, Maggie Sell, and James Burley, testified that they recognized Mr. Gilmore and his vehicle, a black "Hummer," because they observed Mr. Gilmore drive Mr. Fitts and Mr. Funk in the Hummer to various drug deals.  For example, Mr. Sneddon described observing the Hummer on three occasions when Mr. Sneddon was purchasing methamphetamine from Mr. Funk, two of which Mr. Funk was driving the Hummer while Mr. Gilmore was also present, and Ms. Sell described that she observed Mr. Fitts either driving or riding in Mr. Gilmore's Hummer when she met up with him to buy methamphetamine on several occasions.  Cassy Mauerman, Mr. Gilmore's girlfriend, testified that she rode along in the Hummer with Mr. Gilmore and Mr. Fitts on a number of occasions as Mr. Fitts delivered methamphetamine to his customers in St. Joseph, and Mr. Fitts gave Mr. Gilmore methamphetamine in payment.  Ms. Mauerman also testified that Mr. Gilmore always provided her with methamphetamine, and Mr. Gilmore also gave methamphetamine to her cousin, Jason Wilson, and her friend, Jarika McGinnes.  Leona Garcia, the main methamphetamine supplier for Mr. Fitts and Mr. Funk, testified that she recognized Mr. Gilmore and his Hummer because Mr. Gilmore had come with Mr. Fitts and Mr. Funk to her house to purchase  methamphetamine on a couple of occasions.  Steve Saindon, who was Ms. Garcia's boyfriend and served as security at her house, also recognized Mr. Gilmore and his Hummer from observing him and it at Ms. Garcia's house.  Mr. Fitts and Mr. Funk, two main methamphetamine suppliers in the St. Joseph area, both testified that Mr. Gilmore drove them around in his Hummer as they delivered

drugs in the St. Joseph area. They testified that Mr. Gilmore also drove them into Kansas City, Kansas to Ms. Garcia's house where they would purchase methamphetamine. Both would give Mr. Gilmore methamphetamine in exchange for his driving them around, and Mr. Fitts also testified that Mr. Gilmore purchased methamphetamine from him.[2] Mr. Fitts testified that based on what Mr. Gilmore had told him, he believed Mr. Gilmore had his own customers to whom he would sell methamphetamine. Mr. Gilmore admitted during his own testimony that he gave money to Mr. Fitts so that they could purchase methamphetamine from Ms. Garcia. Mr. Funk also testified that on several occasions Mr. Gilmore allowed him to borrow the Hummer to deliver methamphetamine to his customers without Mr. Gilmore present, and he paid Mr. Gilmore in methamphetamine.

In addition, Mr. Gilmore's own written statement from April 4, 2007 provides substantial evidence of Mr. Gilmore's role in the conspiracy to distribute and possess with intent to distribute methamphetamine. In his written statement, which was admitted into evidence at trial, Mr. Gilmore admitted:

> In the past month and a half I have taken Wayne [Fitts] and Kevin [Funk] down to Kansas. I took them to a Hispanic female's house. I knew that Kevin and Wayne both got meth from the Hispanic female. I don't know how much

---

[2]Several witnesses testified that they received a better deal on the methamphetamine if they bought it in larger quantities; if they bought eight ounces at one time, they would receive a ninth ounce free. Therefore, the buyers from St. Joesph would pool their money to get this better deal. Mr. Fitts testified that the various people, including Mr. Gilmore, would put in their money collectively and then receive a percentage of the methamphetamine depending on the amount of money contributed.

they got from her.  Wayne and Kevin both gave me a pinch (quarter gram or less) of meth each time.  Some times Wayne drove my Hummer to Kansas from St. Joseph.

Wayne has given me meth less than a dozen times in the month and a half that I [have] known him.

Kevin has given me meth three times since I [have] known him.

Neither Kevin or Wayne has ever charged me for the meth that I've gotten from them.

Government's Exhibit No. 95.  In this statement, Mr. Gilmore admitted that he drove Mr. Fitts and Mr. Funk to Ms. Garcia's house on numerous occasions to purchase methamphetamine, and in return, he received methamphetamine for which he did not pay.  While Mr. Gilmore, in his statement, stated that he did not know how much methamphetamine Mr. Fitts and Mr. Funk were purchasing from Ms. Garcia, every witness, with the exception of Mr. Gilmore, who had been present for a drug transaction at Ms. Garcia's house testified that each transaction took place out in the open in full view of everyone in the room.  Thus the jury could readily have concluded that Mr. Gilmore agreed to participate in a conspiracy to distribute or possess with intent to distribute by providing transportation in return for payment in drugs.

Under the essential objective element "the government must prove that the alleged conspirator had a general awareness of both the scope and the objective of the enterprise." *Pulido-Jacobo*, 377 F.3d at 1130 (quoting *Evans*, 970 F.2d at 670).  Relying on the evidence discussed under the "agreement" element and the additional evidence discussed below, the court finds that the government provided sufficient evidence to show that Mr. Gilmore was aware of the scope and objective of the methamphetamine

conspiracy. Particularly, the evidence indicated that Mr. Gilmore was aware of the entire conspiracy: Mr. Gilmore was present on multiple occasions as Mr. Fitts and Mr. Funk purchased multiple ounces of methamphetamine from Ms. Garcia. Ms. Garcia testified that she conducted her drug operations in one large room in the upstairs of her house. Ms. Garcia also explained how the drug deal would occur: Mr. Fitts and/or Mr. Funk would arrive at Ms. Garcia's house with Mr. Gilmore and occasionally others and place their order; Ms. Garcia would count the money and then call her supplier; while they waited, they would frequently get high together; once the supplier arrived with the methamphetamine, he would hand it to Mr. Fitts and Ms. Garcia would hand the supplier the money and finally Ms. Garcia would take her cut of the methamphetamine from the bag. Several witnesses, including Mr. Fitts, Mr. Funk, Roger Miller,[3] and Mr. Burley, corroborated that this was how drug deals occurred in Ms. Garcia's house. Several of witnesses, including Ms. Garcia herself, admitted that her house was an intentionally intimidating place and that no one really wanted to go there on their own. Therefore, Mr. Gilmore also served as an extra individual in the intimidating atmosphere of Ms. Garcia's drug house. Additionally, in Mr. Gilmore's own April 4, 2007 written statement, Mr. Gilmore revealed that he had knowledge of at the very least the roles of Mr. Fitts, Mr. Funk, and the Hispanic woman, that is, Ms. Garcia, in the conspiracy and

---

[3]Mr. Miller was the individual who first introduced Mr. Fitts to Ms. Garcia. He also purchased methamphetamine on several occasions from Ms. Garcia prior to his arrest in January 2007. Mr. Miller testified that he also recognized Mr. Gilmore and his black Hummer.

the statement also outlines his own involvement.  Finally, many of Mr. Fitts's and Mr. Funk's customers testified that they observed Mr. Gilmore on multiple occasions when Mr. Fitts or Mr. Funk would deliver drugs.  Mr. Fitts and Mr. Funk both testified that they paid Mr. Gilmore methamphetamine in exchange for his driving services, and that he was present when they went to buy drugs from Ms. Garcia and as they delivered drugs to their customers. This evidence shows that Mr. Gilmore had at the very least a general awareness of the objective to distribute methamphetamine, the scope as to the amount of drugs and money exchanged, and the participants involved.

A jury may presume that "a defendant is a knowing participant in the conspiracy when he acts in furtherance of the objective of the conspiracy."  *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994); *United States v. Carter*, 130 F.3d 1432, 1440 (10th Cir. 1997).  Relying on the same body of evidence already presented, the court finds that Mr. Gilmore took steps to act in furtherance of distribution and possession with intent to distribute methamphetamine to indicate he was knowingly and voluntarily involved.  Specifically, Mr. Gilmore's willingness to provide a legal vehicle to Mr. Fitts and Mr. Funk enabled their drug trafficking activities.  The government presented sufficient evidence to allow a rationale jury to conclude that Mr. Gilmore engaged in the conspiracy knowingly and voluntarily.

"Interdependence exists where each coconspirator's actions constitute essential and integral steps toward the realization of a common, illicit goal." *Pulido-Jacobo*, 377 F.3d at 1131 (quoting *Carter*, 130 F.3d at 1440).  The evidence supports the jury's

finding of interdependence because it shows that Mr. Gilmore and the other coconspirators were united in a common, unlawful goal to facilitate the possession and distribution of methamphetamine. Mr. Gilmore, as well as others, took affirmative steps to facilitate this goal. Particularly, Mr. Gilmore provided a legal vehicle to Mr. Fitts and Mr. Funk in which they could go to Kansas City to purchase methamphetamine from Ms. Garcia and in which they could deliver methamphetamine to their customers in St. Joseph. In return, Mr. Fitts and Mr. Funk provided Mr. Gilmore with methamphetamine. Mr. Gilmore's actions–providing a legal vehicle and by some accounts serving as an extra body in the intimidating atmosphere of Ms. Garcia's drug house–were "essential and integral steps toward the realization of a common, illicit goal." Mr. Fitts also testified that Mr. Gilmore purchased methamphetamine from him–a fact that Mr. Gilmore admitted during his own testimony. As discussed previously, several witnesses testified that Ms. Garcia and her suppliers would provide a ninth ounce for free if an individual would buy eight ounces at one time. To get this better deal, the buyers from St. Joseph would pool their money. Mr. Fitts testified that various people, including Mr. Gilmore, would give Mr. Fitts their money and they would collectively purchase a larger amount of methamphetamine and then receive a percentage of the methamphetamine depending on the amount of money each contributed. Consequently, the St. Joseph individuals were all working collectively and depended on each other's contributions of money to achieve the broader goal of purchasing a larger amount of methamphetamine for a lower price. All of the coconspirators, including Mr. Gilmore, therefore, made

essential and integral steps toward the realization of the goal to sell methamphetamine, which satisfies the interdependency element.

Mr. Gilmore also argues that the government failed to establish beyond a reasonable doubt that the conspiracy involved 50 grams or more of methamphetamine. However, multiple witnesses consistently testified that Mr. Fitts and Mr. Funk were purchasing any where from four to nine ounces at each transaction with Ms. Garcia.[4] Mr. Fitts and Mr. Funk testified that they went to Ms. Garcia's house multiple times a week to purchase methamphetamine over a several month period.  In addition, Mr. Saindon testified that he observed Mr. Gilmore with Mr. Fitts at Ms. Garcia's house during more than one eight to nine ounce transaction.  Mr. Fitts testified that Mr. Gilmore had accompanied him to four to five transactions involving four to nine ounces at each transaction.  Even taking Mr. Fitts's testimony at its most conservative estimate, Mr. Gilmore would have been personally present when Mr. Fitts purchased over 450 grams from Ms. Garcia.[5]  In fact, Mr. Gilmore admitted himself while he was on the stand that he had driven Mr. Fitts to Ms. Garcia's house on multiple occasions with the knowledge that Mr. Fitts was going there to purchase drugs.  In his written statement,

---

[4] One ounce equals 28.35 grams.  Therefore, one transaction between Mr. Fitts and Mr. Funk and Ms. Garcia would easily satisfy amount of methamphetamine the government alleged in Count 1 of the Second Superseding Indictment.

[5] A conservative estimate based on Mr. Fitts's testimony would equal 453.6 grams–four trips at four ounces each trip (4 trips x 4 ounces x 28.35 grams = 453.6 grams).

Mr. Gilmore admitted that Mr. Fitts had given him methamphetamine in exchange for the use of his vehicle "less than a dozen times in the month and a half that [Mr. Gilmore had] known [Mr. Fitts]." Mr. Gilmore also admitted that Mr. Funk had given him methamphetamine in exchange for the use of his vehicle three times since he had known him. Ms. Mauerman testified that she was present when Mr. Gilmore drove Mr. Fitts around St. Joseph, Missouri to deliver approximately seven ounces of methamphetamine to his various customers.[6] Ms. Garcia and Mr. Funk further testified to multiple ounce transactions where Mr. Gilmore was present. There was overwhelming evidence of Mr. Gilmore's involvement in the conspiracy to distribute methamphetamine upon which the jury returned a verdict of guilt. The direct and circumstantial evidence presented in this case is more than sufficient to establish the elements of conspiracy and to establish that the conspiracy involved 50 grams or more of methamphetamine. Based on the foregoing, there was sufficient evidence to convict Mr. Gilmore of Count 1 of the Second Superseding Indictment. Relying on that same evidence and legal authority set forth, the verdict is not contrary to the law or evidence in this case. As a result, Mr. Gilmore's request for judgment of acquittal on the basis of the sufficiency of the evidence is denied.

*B. Jury Instructions*

Mr. Gilmore also argues that he is entitled to a new trial or judgment of acquittal because the instructions given to the jury were flawed. According to Mr. Gilmore, the

---

[6]Seven ounces equals 198.45 grams.

court erred 1) by failing to instruct the jury on the lesser-included crime of conspiracy to possess, 2) by failing to instruct the jury that the definition of "distribute" does not include "sharing" as described by Mr. Gilmore during his testimony, and 3) by failing to give the requested modified charging instruction on the charged conspiracy count.

1. Lesser-Included Offense Instruction

Mr. Gilmore requested that a lesser-included offense instruction as to the crime of Conspiracy to Possess Methamphetamine be given. "Defendant's Second Supplemental Jury Instruction Request," Doc. 272, at 4.  However, a lesser-included offense instruction is required only if the following four elements are met: (1) there has been a proper request; (2) the lesser-included offense must consist of some, but not all of the elements of the offense charged; (3) the elements differentiating the two offenses must be a matter in dispute; and (4) a jury must be able rationally to convict the defendant of the lesser offense and acquit of the greater offense. *United States v. James*, 257 F.3d 1173, 1183 (10th Cir. 2001) (citing *United States v. Joe*, 831 F.2d 218, 219 (10th Cir. 1987)).  Mr. Gilmore's request for the lesser-included offense instruction fails on the third and fourth prongs of the four-element test.

To establish a conspiracy, the government must prove that two or more persons reached an agreement to achieve an illegal purpose, the defendant voluntarily and intentionally joined that agreement, and at the time the defendant joined the agreement, he knew the agreement's essential purpose. *Pulido-Jacobo*, 377 F.3d at 1129.   The difference between a conspiracy to possess and a conspiracy to distribute or possess with

14

intent to distribute methamphetamine is clear–the essential purpose of the conspiracy to possess is mere possession of methamphetamine, whereas the purpose of conspiracy to distribute or possess with intent to distribute is an intent to distribute methamphetamine.

Mr. Gilmore's request for the lesser-included offense instruction fails on the third prong because it is not the elements differentiating the two offenses that are in dispute; rather, the matter in dispute is whether Mr. Gilmore was a member of the conspiracy or just a consumer.  The government presented overwhelming evidence that at the very least Mr. Fitts, Mr. Funk, and Ms. Garcia were members in a conspiracy to distribute and to possess with intent to distribute methamphetamine.  It is clear that Mr. Gilmore's theory of the case was that he was in a simple buyer-seller relationship with at the very least Mr. Fitts and perhaps Mr. Funk.  Therefore, the critical question is whether Mr. Gilmore was also a member of this conspiracy to distribute and to possess with intent to distribute.  In response to Mr. Gilmore's theory that he was merely a consumer of methamphetamine and therefore not a member of the conspiracy with the others, the court gave a buyer-seller instruction informing the jury that "[t]he existence of a simple buyer-seller relationship between a defendant and another person, without more, is not sufficient to establish a conspiracy." *See* Instruction No. 16.   The jury necessarily rejected Mr. Gilmore's theory that he was a simple buyer in finding him guilty of Count 1 of the Second Superseding Indictment.  As a result, Mr. Gilmore's request does not satisfy the third prong.

In addition, there was no evidence that Mr. Gilmore was involved in a conspiracy

to possess methamphetamine, while there was ample evidence, if credited by the jury, that he was involved in a conspiracy to distribute methamphetamine.  Therefore, Mr. Gilmore's request for the inclusion of the lesser-included offense instruction necessarily fails on prong four as well.  Without any evidence of a conspiracy to possess, the jury could not rationally convict Mr. Gilmore on the lesser offense of conspiracy to possess.  According to his own testimony at trial, he gave money to Mr. Fitts that was pooled with other money to purchase methamphetamine from Ms. Garcia.  Mr. Fitts, Mr. Funk, and Ms. Garcia all testified that the St. Joseph people pooled their money together to enable them to get a better deal on the methamphetamine since they could get a free ounce if they purchased eight ounces at one time.  In addition, Mr. Gilmore played a critical role in Mr. Fitts's and Mr. Funk's distribution of methamphetamine because his legally titled Hummer gave them a vehicle to use to purchase methamphetamine from their supplier and to distribute methamphetamine to their customers. [7]  Therefore, the evidence presented in this case did not support the defendant's request for the lesser-included offense instruction as it failed the fourth prong–the jury must be able rationally to convict the defendant of the lesser offense and acquit of the greater offense.

2. Distribution Instruction

Mr. Gilmore also objected to the court's definition of the term distribution in the jury instructions.  The court drew its definition of the term distribution from the Tenth

_____

[7]As was previously discussed above, Mr. Gilmore admitted as much regarding his role in the conspiracy in his written statement to law enforcement on April 4, 2007.

Circuit Pattern Jury Instruction 2.85.1, which reads as follows:

> The term "distribute" means to deliver or to transfer possession or control of something from one person to another. The term "distribute" includes the sale of something by one person to another. It is not necessary, however, for the government to prove that any transfer of money or other thing of value occurred at the same time as, or because of, the distribution.

*See* Instruction No. 21. The definition of "distribute" found in the Pattern Jury Instructions is drawn in part from 21 U.S.C. § 802(11), which states: "The term 'distribute' means to deliver . . . a controlled substance." 21 U.S.C. § 802(8) further defines "deliver" to "mean the actual, constructive, or attempted transfer of a controlled substance . . . whether or not there exists an agency relationship." *See also United States v. Eddy*, 523 F.3d 1268, 1271 (10th Cir. 2008) (discussing that distribution "contains no requirement that there be compensation").

Mr. Gilmore requested an alternative instruction that would exclude the "sharing" as described by the defendant during his testimony, specifically, Mr. Gilmore wanted the distribution instruction to include the following language: "Distribution does not include sharing among drug users. It requires delivering or transferring rights by one person (or groups of persons) to another such that the delivering or transferring party does not retain rights in the drugs." "Defendant's Second Supplemental Jury Instruction Request," Doc. 272, at 2. Mr. Gilmore based this request on *United States v. McIntyre*, 836 F.2d 467, 471 (10th Cir. 1987). In *United States v. McIntrye*, the defendant maintained that he was merely a buyer in several unrelated transactions, and therefore, he was not involved in a conspiracy to distribute drugs. As discussed above, the jury necessarily rejected Mr.

17

Gilmore's argument that he was a simple buyer when they found him guilty of Count 1. Nonetheless, Mr. Gilmore argues that *McIntyre* stands for the general proposition that distribution does not include sharing drugs with friends. *See id.* ("There is no indication that defendant was making a profit or distributing cocaine when he merely shared his purchases with his friends present at the time of sale.")  However, Mr. Gilmore is taking this portion of the case out of context to arrive at his general definition of distribution. *McIntrye* was really addressing what was sufficient evidence to support a conspiracy to distribute–not the definition of distribution.  In any event, the government presented more evidence than just Mr. Gilmore's sharing of methamphetamine with friends to support his involvement in the conspiracy to distribute.  Namely,  there was evidence from Mr. Fitts's testimony that he believed Mr. Gilmore was selling at least a portion of the methamphetamine he was getting from him.  Ms. Mauerman's testimony also indicated that Mr. Gilmore was selling methamphetamine.  Perhaps most critically, Mr. Gilmore facilitated the conspiracy's objective of distributing methamphetamine by providing a legal vehicle for Mr. Fitts and Mr. Funk to use to purchase methamphetamine from their supplier and to distribute methamphetamine to their customers.

A defendant is entitled to jury instructions on defenses which are supportable by the evidence so long as these instructions are a correct statement of the law.  *United States v. Urbano*, 563 F.3d 1150, 1155 (10th Cir. 2009).  However, Mr. Gilmore's proffered instruction on distribution was not a correct statement of the law.  Sharing

drugs with another does constitute distribution. *See United States v. Hester*, 140 F.3d 753, 761 (8th Cir. 1998); *United States v. Washington*, 41 F.3d 917, 919 (4th Cir. 1994); *United States v. Ramirez*, 608 F.2d 1261, 1264 (9th Cir. 1979). Therefore, Mr. Gilmore was not entitled to such an instruction.

*3. Modified Charging Instruction on Conspiracy*

Finally, Mr. Gilmore argues that the court erred by refusing to give a modified charging instruction on the charged conspiracy count. In its response to Mr. Gilmore's motion, the government interpreted this as the defendant arguing that the court should have only instructed the jury as to conspiracy or aiding and abetting, and not both. However, the court believes Mr. Gilmore is actually saying that the court erred by refusing his request to modify the conspiracy instruction to remove the word "mere" from the second paragraph under "Conspiracy–Agreement" and by refusing to add the sentence "However, presence or association with persons within the charged conspiracy does not necessarily establish proof of interdependence between members of a charged conspiracy" to the second paragraph of the "Interdependence" section in the Tenth Circuit Pattern Criminal Jury Instruction No. 2.87.

While the Tenth Circuit has repeatedly held that mere presence at the scene of a crime or association with codefendants is not enough to support a conspiracy conviction, *see United States v. Summers*, 414 F.3d 1287, 1296 (10th Cir. 2005); *United States v. Starnes*, 109 F.3d 648, 650 (10th Cir. 1997); and *United States v. Russell*, 109 F.3d 1503, 1514 (10th Cir. 1997), the court believes that removing the word "mere" and adding the

requested sentence would not have accurately reflected Tenth Circuit law on these points and would have been misleading on the one hand and superfluous on the other. Certainly the jury could consider Mr. Gilmore's presence in the context in which the government's evidence demonstrated it, and the jury was clearly instructed that it need find more than presence alone. The government presented an overwhelming amount of evidence that Mr. Gilmore was aware and actively involved in the conspiracy beyond his "mere" presence on multiple occasions at the crime scenes. In addition, the Tenth Circuit has also repeatedly upheld jury instructions that contain the concept captured by the sentence at dispute here: "Mere similarity of conduct among various persons, and the fact that they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy." *See e.g.*, *United States v. Dozal*, 173 F.3d 787, 796-97 (10th Cir. 1999); *United States v. Johnson*, 146 F.3d 785, 793 (10th Cir. 1998); *United States v. Edwards*, 69 F.3d 419, 434 n.8 (10th Cir. 1995); *United States v. Fox*, 902 F.2d 1508, 1517(10th Cir. 1990). Viewing the instructions as a whole, the court believes the jury was adequately instructed on this point.

## II. Motion for New Trial

Mr. Gilmore seeks, in the alternative, a new trial under Federal Rule of Criminal Procedure 33 on the basis that there was insufficient evidence to convict the defendant and that the verdict is contrary to the evidence and the law. Additionally, Mr. Gilmore argues that the court incorrectly instructed the jury. The court hereby incorporates its

discussion of the evidence and the law under Part I to conclude that there was sufficient evidence, the verdict was not contrary to the evidence or the law, and the court properly instructed the jury.  The interest of justice does not require a new trial, and consequently, the motion for a new trial is denied.

IT IS THEREFORE ORDERED BY THE COURT THAT Mr. Gilmore's "Motion for a New Trial and/or Judgment of Acquittal" (Doc. 280) is **DENIED**.

IT IS SO ORDERED.

Dated this 10th day of July, 2009, in Kansas City, Kansas.

___s/ John W. Lungstrum___
John W. Lungstrum
United States District Judge